# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**June 18, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0189

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**V.**

**CHARLES EDWARD BRUFFEY,**
**Defendant Below, Petitioner**

---

**Appeal from the Circuit Court of Mineral County**
**Honorable Lynn A. Nelson, Judge**
**Criminal Action No. 11-F-29**

**AFFIRMED**

---

Submitted: April 24, 2013
Filed: June 18, 2013

Nicholas T. James
James Law Firm PLLC
Keyser, West Virginia
Attorney for the Petitioner

Patrick Morrisey
Attorney General
Thomas W. Rodd
Assistant Attorney General
Andrew D. Mendelson
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

**The Opinion of the Court was delivered PER CURIAM.**

**CHIEF JUSTICE BENJAMIN and JUSTICE KETCHUM dissent and reserve the right to file dissenting opinions.**

**SYLLABUS BY THE COURT**

1.      "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion."  Syllabus point 10, *State v. Huffman*, 141 W. Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994).

2.      "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings."  Syllabus point 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

3.      "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W. Va. R. Evid. 404(b)."  Syllabus point 1, *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

i

4.      "Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence." Syllabus point 2, *State v. McGinnis,* 193 W. Va. 147, 455 S.E.2 516 (1994).

5.      "In the exercise of discretion to admit or exclude evidence of collateral crimes and charges, the overriding considerations for the trial court are to scrupulously

ii

protect the accused in his right to a fair trial while adequately preserving the right of the State to prove evidence which is relevant and legally connected with the charge for which the accused is being tried." Syllabus point 16, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974).

6.     "Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." Syllabus point 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

7.     "In a criminal case, the burden is upon the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Syllabus point 3, *State v. Frazier*, 229 W. Va. 724, 735 S.E.2d 727 (2012).

8.     "'To constitute probable cause for the issuance of a search warrant, the affiant must set forth facts indicating the existence of criminal activities which would justify a search and further, if there is an unnamed informant, sufficient facts must be set forth

demonstrating that the information obtained from the unnamed informant is reliable.'

Syllabus point 1, *State v. Stone*, 165 W. Va. 266, 268 S.E.2d 50 (1980)." Syllabus point 1,

*State v. Hall*, 171 W. Va. 212, 298 S.E.2d 246 (1982).

**Per Curiam:**

The petitioner herein and defendant below, Charles Edward Bruffey (hereinafter "Mr. Bruffey"), was sentenced on January 18, 2012, to a term of incarceration of ten to twenty years following his jury conviction for robbery. Mr. Bruffey asserts that the trial court committed four errors: (1) admitting the prosecution's solicited testimony on Mr. Bruffey's silence post-*Miranda*[1] warning; (2) allowing Rule 404(b) evidence of a second uncharged bank robbery without an adequate *McGinnis*[2] hearing; (3) violating Mr. Bruffey's Sixth Amendment rights by permitting a police officer to testify about statements made by a witness who did not take the stand at trial; and (4) finding that the investigating officer's affidavit was sufficient to establish probable cause for a search warrant. Based upon the parties' written briefs and oral arguments, the appendix record designated for our consideration, and the pertinent authorities, we affirm the circuit court.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts of this case intertwine two separate bank robberies: one that occurred on December 23, 2009 (hereinafter the "charged robbery") and a subsequent robbery that

---

[1]*See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2]*See State v. McGinnis*, 193 W. Va. 147, 455 S.E.2 516 (1994), discussed in more detail *infra*.

1

took place on February 26, 2010 (hereinafter the "uncharged robbery" or "second robbery"). This appeal directly involves only Mr. Bruffey's conviction for the charged robbery.[3]

### A.   Charged Robbery

At about 9:30 a.m. on December 23, 2009, a white male with blue eyes entered the M&T Bank in Fort Ashby, West Virginia. He was wearing a hat, a hood, a scarf, and a Carhart-type jacket that had duct tape over the name badge area. The man approached the bank teller and said, "this is a robbery . . . give me all your loose bills . . . place them on the counter . . . no bait money or dye pack." The robber was apologetic for his actions, explaining that he "was sorry," that he had "lost his job," and that he "had to [rob the bank]." The teller gave money to the robber totaling $1618.00. The robber then fled the bank on foot, turning left immediately upon exiting the bank's front doors.

Minutes after the robbery, Sergeant Droppleman arrived on the scene. He requested that a K-9 dog "tail" the robber. The dog found a scent and tracked it to a red car that was parked in a parking lot about three hundred feet from the bank. A freshly-smoked cigarette butt was found on the ground beside the red car. Sergeant Droppleman spoke to the

---

[3]At some point in time thereafter, Mr. Bruffey was indicted for participation in the uncharged robbery; however, that case is not before us. The uncharged robbery is germane to this case only insofar as its facts were used to buttress the evidence used in the trial of the charged robbery.

owner of the red car spotted by the K-9 officer on the morning of the charged robbery. The owner of the red car told the Sergeant that he saw a purple car parked near his red car, and that a man was sitting in the purple car and smoking a cigarette. The cigarette butt found on the morning of the charged robbery contained Mr. Bruffey's DNA. Mr. Bruffey eventually was indicted for the first robbery in January 2011. A jury trial was held September 26 and 27, 2011, which ultimately resulted in a conviction.

### B.     *Uncharged Robbery*

About two months after the first robbery, on February 26, 2010, the bank was robbed again by a white, unarmed male with blue eyes. The robber was wearing a coat and a hooded sweatshirt, and had a burgundy-colored scarf around his face. He did not speak but handed the teller a note demanding money, which stated, "This is a robbery[.] [G]ive me $20-$50-$100 dollar bills[.] Put the money on the counter spread out[.] No tricks, dye packs, bait money[.] No one gets hurt."

During the ensuing investigation, Sergeant Droppleman was informed that a purple car also had been seen in the same parking lot a couple of days before the uncharged robbery. The Sergeant was able to link the purple car to Mr. Bruffey. Moreover, a handwriting expert with the Federal Bureau of Investigation (hereinafter "FBI") determined

that the demand note used in the commission of the uncharged robbery had been written by Mr. Bruffey.

### C. Procedural History of Charged Robbery

Subsequent to this second incident, Sergeant Droppleman suspected Mr. Bruffey as the perpetrator of the first bank robbery. A search warrant was secured and executed on Mr. Bruffey's residence. Pursuant to the search, property was seized including a blue jacket, a grey hooded sweatshirt, a maroon cloth, two blue notebooks containing known writing by Mr. Bruffey, and a pack of cigarettes. Further, Sergeant Droppleman obtained a mouth swab from Mr. Bruffey to be used in DNA comparison for the cigarette butts found at the scene of the charged robbery.

At a June 28, 2011, pre-trial hearing, the circuit court heard argument regarding the State's "Notice of Intent to Use 404(b)" evidence. In this regard, the State sought to use evidence during the trial of the charged robbery that had been obtained through the investigation of the uncharged robbery. While Mr. Bruffey had not yet been charged with the February 26, 2010, robbery,[4] the State wished to use such evidence to establish Mr. Bruffey's common scheme and plan, to identify Mr. Bruffey as the perpetrator, and to show

---

[4]At some later time, Mr. Bruffey was charged with the second robbery.

the plan and intent of Mr. Bruffey. The State sought to enter, among other things, the testimony of an FBI handwriting expert who had determined that Mr. Bruffey wrote the demand note used in the uncharged robbery, as well as evidence regarding the purple car owned by Mr. Bruffey and its appearance close in time and proximity to both bank robberies.

After the hearing on the 404(b) evidence, the circuit court entered a July 7, 2011, order stating, in relevant part, as follows:

> 2.     [The robber] told the teller that "this is a robbery", "give me all your loose money", directed her to lay the money on the counter, asked "if there were any bait or die (sic) packs", stated that he "wouldn't hurt me [the teller]", and that "he had just lost his job and he had to do this".
>
> . . . .
>
> 4.     [T]he M&T Bank . . . was robbed a second time . . . The suspect . . . held up a note . . . that stated:  "This is a robbery give me $20-$50-$100 dollar bills lots Put the money on the counter spread out No tricks, dye packs, bait money No one gets hurt".
>
> 5.     Sgt. Droppleman suspected that [Mr. Bruffey] was the robber in the first bank robbery and executed a search warrant on his residence. The property seized included a blue jacket, gray hooded sweatshirt, maroon cloth, two blue lined notebooks containing know [sic] writing of [Mr. Bruffey's], and a pack of Pall Mall cigarettes. Sgt. Droppleman also obtained a mouth swab from [Mr. Bruffey] for DNA comparison[.]
>
> . . . .
>
> 7.     The note that was recovered from the scene at the second robbery was submitted to the FBI crime lab for

5

comparison to the recovered samples from the search. . . . the FBI examiner confirmed that the note was authored by [Mr. Bruffey].

. . . .

10.    In conducting the McGinnis analysis, this Court is convinced by a preponderance of the evidence that the second robbery did occur and that [Mr. Bruffey] was the person who committed it based upon the fact that [Mr. Bruffey] robbed the exact same bank in an almost identical manner. The Court likewise is convinced based upon the results of the handwriting analysis that [Mr. Bruffey] did author the note found at the second robbery. Additionally, the use of the terms "bait money" and "dye pack" during both robberies seems to indicate that the same actor was involved on both occasions. . . .

Following a two-day jury trial, Mr. Bruffey was convicted on September 27, 2011, of the charged robbery in violation of W. Va. Code § 61-2-12 (2000) (Repl. Vol. 2010). During the December 28, 2011, sentencing hearing, the circuit court denied Mr. Bruffey's motion for a new trial and sentenced him to not less than ten nor more than twenty years in prison. The circuit court's sentencing order was entered January 18, 2012, and this appeal followed on February 3, 2012.

## II.

## STANDARD OF REVIEW

This case comes before this Court on appeal from a sentencing order. We previously have explained our standard of reviewing sentencing orders as follows: "The

6

Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). With respect to Mr. Bruffey's challenges to the circuit court's evidentiary rulings, we note that, generally, "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 10, *State v. Huffman*, 141 W. Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994). Mindful of these guidelines, we turn to the arguments raised herein. Additional standards for our review are set out in our discussion of the particular issues to which they pertain.

### III.

### DISCUSSION

On appeal to this Court, Mr. Bruffey sets forth four assignments of error: (1) the admission of the prosecution's solicited testimony on Mr. Bruffey's silence post-*Miranda*[5] warning; (2) the admission of Rule 404(b) evidence of a second uncharged bank robbery without an adequate *McGinnis*[6] hearing; (3) the violation of Mr. Bruffey's Sixth Amendment rights by permitting a police officer to testify about statements made by

---

[5]*See* note 1, *supra.*

[6]*See State v. McGinnis*, 193 W. Va. 147, 455 S.E.2 516 (1994), *infra*.

7

a witness who did not take the stand at trial; and (4) the conclusion that the investigating officer's affidavit was sufficient to establish probable cause for a search warrant. We will address each issue individually.

### A. *Silence Post-Miranda Warning*

Mr. Bruffey's initial assignment of error is that the prosecution improperly solicited trial testimony that commented on his silence post-*Miranda* warning. Moreover, Mr. Bruffey asserts that his counsel's failure to object to the statements was plain error. The State, conversely, asserts that none of the statements of which Mr. Bruffey complains amounted to an improper reference to his silence.

Both Article III, Section 5 of the West Virginia Constitution and the Sixth Amendment of the United States Constitution provide a constitutional right to remain silent. It is reversible error for the State to cross-examine a defendant in regard to his pre-trial silence or to comment on the defendant's silence to the jury. *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977). *See also State v. Fortner*, 150 W. Va. 571, 148 S.E.2d 669 (1966), *overruled on other grounds*. Defendants are presumed innocent at trial, "[s]o the law having brought the prisoner into court against his will, [must] not permit his silence to be treated or used as evidence against him." *State v. Taylor*, 57 W. Va. 228, 50 S.E. 247 (1905).

8

Mr. Bruffey argues that, during the State's opening statement, it made reference to his pre-trial silence by commenting, "[o]n another occasion, after another *Miranda* warning was given, Sergeant Droppleman also was told by [Mr. Bruffey], 'I think I should wait to talk to you about this,' and said nothing further." Then, during the State's case-in-chief, the prosecutor solicited the following response from Sergeant Droppleman, "[W]e didn't take a written statement. [Mr. Bruffey] didn't want to provide one, which is his right." Thereafter, the prosecutor asked Sergeant Droppleman, "Did [Mr. Bruffey] make any statement to you on the occasion after being advised of his rights?" Sergeant Droppleman replied:

> Yes. On October 13th 2010, I located [Mr. Bruffey] at Ray's Texaco, at which point in time I took him into custody . . . . I read his Miranda rights at the counter and then took him out. We drove to the office. And then after I got him to the office before processing, I filled out another Miranda form, a written form, he did initial portions of that form, but decided not to sign it. He didn't want to sign a waiver. He didn't want to waive his rights and provide a written statement to me at that time.

As previously noted, Mr. Bruffey invites this Court to invoke the plain error doctrine because his counsel failed to object to the alleged post-*Miranda* silence comments. The plain error doctrine is set forth in Syllabus point 7 of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), which states: "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously

9

affects the fairness, integrity, or public reputation of the judicial proceedings." We find that, under the facts of the present case, the first prong of the test has not been satisfied. That is, there was no error, as established by a full reading of the record.

The prosecution's and Sergeant Droppleman's brief references to Mr. Bruffey's *Miranda* warnings were not made to call attention to Mr. Bruffey's pre-trial silence but rather to properly lay the foundation for the admission of Mr. Bruffey's inculpatory statements that he made after he was read his *Miranda* warnings. The inculpatory statements were that he "had been unemployed and out of work for a number of months," and "I'm going to jail for a long time." The first statement was relevant because the bank robber had told the teller that he had lost his job. The second statement was relevant as a tacit admission of guilt.

We agree with Mr. Bruffey that it would have been improper for the State to suggest that his silence is indicative of guilt. Importantly, the State did not comment on Mr. Bruffey's silence. Rather, the State merely directed the jury's attention to Mr. Bruffey's inculpatory statements. For these reasons, petitioner's first assignment of error is without merit.

## B. 404(b) Evidence

Next, Mr. Bruffey argues that the circuit court committed reversible error in admitting Rule 404(b) evidence regarding the uncharged robbery for the purpose of showing a common plan or scheme and identity because: (1) the circuit court admitted the evidence solely on the State's proffer; (2) Mr. Bruffey had not been charged with the second robbery when the circuit court admitted the evidence; and (3) the evidence was highly prejudicial. To the contrary, however, the State asserts that the evidence proffered at the pre-trial hearing on the 404(b) evidence was sufficient for the circuit court to find it both admissible and relevant.

Specifically, it is well established that

> [t]he standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W. Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996). Moreover, this Court previously has recognized that its function on appeal

> is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to

11

have abused its discretion.  In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect.

*State v. Willett*, 223 W. Va. 394, 397, 674 S.E.2d 602, 605 (2009) (per curiam).

Generally,

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. W. Va. R. Evid. 404(b).

Syl. pt. 1, *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).  Rule 404(b)

of the West Virginia Rules of Evidence states as follows:

(b) Other crimes, wrongs, or acts. – Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Where an offer of evidence is made under Rule 404(b) of the West Virginia

Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of

12

Evidence, is to determine its admissibility. Before admitting the evidence, the trial court

should conduct an *in camera* hearing.

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. pt. 2, *State v. McGinnis,* 193 W. Va. 147, 455 S.E.2 516 (1994). In conducting the

foregoing analysis, trial courts have been directed that,

> [i]n the exercise of discretion to admit or exclude evidence of collateral crimes and charges, the overriding considerations for the trial court are to scrupulously protect the accused in his right to a fair trial while adequately preserving the right of the State to prove evidence which is relevant and legally connected with the charge for which the accused is being tried.

Syl. pt. 16, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974). In that regard, this

Court has recognized that, "[a]s to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. pt. 10, in part, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

In the instant case, there was sufficient evidence for the circuit court to find that the second robbery occurred, that Mr. Bruffey was the perpetrator of the second robbery, and that the two robberies were sufficiently similar to show a common plan or scheme and identity. First, an FBI handwriting expert found the handwriting on the demand note used in the second robbery to be Mr. Bruffey's. Second, the two robberies involved the same bank and occurred within a short period of time. Third, the robber in both crimes was an unarmed white man with blue eyes who used clothing to cover his face and who told the teller not to use dye packs or bait money. The State also alleged that there was substantial forensic evidence linking petitioner to both crimes, including Mr. Bruffey's DNA on the cigarette butt found near the scene after the charged robbery. Further, the similarity and uniqueness of the language used (verbally, in the first robbery, and written, in the second robbery) requesting the money be spread out and no bait or dye packs be used; the FBI's positive identification of the defendant's handwriting on the note used during the uncharged robbery; the similar clothing; the references by the robber to needing money because of unemployment and the conversations Mr. Bruffey had with the investigating officer; and two separate eye witnesses

14

describing the same uniquely-colored car at both robberies was all evidence that was proper to show a common plan or scheme and identity. In this regard, the circuit court found "by a preponderance of the evidence that the second robbery occurred and that [Mr. Bruffey] committed the second robbery due to the similarity between the two crimes, the FBI's handwriting analysis, and the language in the demand note regarding dye packs and bait money."

This Court has affirmed the entry of "other crimes" evidence where the crimes were near in time and of a similar character. *See State v. Bunda*, 187 W. Va. 389, 395, 419 S.E.2d 457, 463 (1992) (per curiam); *State v. Johnson*, 105 W. Va. 598, 143 S.E. 352, 353 (1928). Therefore, in light of the *McGinnis* standard, the circuit court did not act in an arbitrary manner and did not abuse its discretion in concluding that the substantial probative value of the 404(b) evidence outweighed any prejudicial effect.

As a final note regarding the 404(b) evidence, at the hearing on the matter, the trial court relied upon the evidence proffered by the State in its written notice of 404(b) evidence. The defense did not object to this procedure. Before this Court, however, Mr. Bruffey proposes that the State was required to discuss its evidence in specific terms at the *McGinnis* hearing, relying upon this Court's admonition in *State v. Dolin*:

> [T]he trial court [held] an *in camera* hearing prior to trial to consider the admissibility of the collateral crime evidence.

15

However, at the hearing, the specific collateral . . . offenses the State planned to present at trial and the possible applicable exceptions were simply discussed in general terms. The in camera hearing is rendered meaningless if a trial court is not informed specifically of the details surrounding each collateral offense and is not informed of which exception is applicable. A trial court needs such information so that it can examine the similarities and differences between the collateral offenses and the present offense and can apply the balancing test to determine whether the probative value outweighs the prejudicial effect of such evidence.

176 W. Va. 688, 693-94, 347 S.E.2d 208, 214 (1986), *overruled on other grounds.* However, *Dolin* further explains that the purpose of a 404(b) hearing is to allow a trial court to consider "the similarities and differences between the collateral offenses and the present offenses [so it] can supply the balancing test to determine whether the probative value outweighs the prejudicial effect of such evidence." *Id.,* 176 W. Va. at 694, 347 S.E.2d at 214. In the instant case, the trial court accomplished that purpose as demonstrated by its resulting order which reviewed at length the similarities between the charged and the uncharged offenses and determined that the probative value of the 404(b) evidence outweighed any prejudicial effect. Mr. Bruffey simply has not pointed to a single instance of "clear error" in the circuit court's findings and conclusions to warrant reversal of his conviction on this ground.

### C. Testimonial Statements from Non-Trial Witness

Mr. Bruffey's third assignment of error contends that the lower court improperly allowed trial testimony to be elicited without the witness being called at trial.

Specifically, during trial, the prosecution asked Sergeant Droppleman how he had identified Mr. Bruffey's car. The Sergeant replied: "I want to be careful about what I say-but after the second robbery, there had been another witness come forward and said that, that [Mr. Bruffey's purple] vehicle was near the scene." The defense objected. The Court overruled the objection and said, "Go ahead Sergeant Droppleman. You said another witness had given you some information." Sergeant Droppleman then testified that a witness said that he saw a purple car parked near the bank two days before the second robbery.

We have recognized that,

[p]ursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.

Syl. pt. 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

Mr. Bruffey argues that the witness's statement to the Sergeant was testimonial because (1) the Sergeant was gathering information from the witness as part of his underlying investigation, (2) there was no ongoing emergency when the statement was made, and (3) the reason for taking the statement was to establish or prove past events potentially relevant to later criminal prosecution. Mr. Bruffey avers that the Sergeant's testimony regarding the

17

testimonial statement violated his Sixth Amendment right to confront witnesses against him because the witness did not testify at trial, and, thus, he did not have an opportunity to cross-examine the witness about the statement. However, even assuming that Mr. Bruffey's contention is true, we find the introduction of such evidence to be harmless.

We have stated that violation of a constitutional right constitutes reversible error unless that error is harmless beyond a reasonable doubt. *Mechling*, 219 W. Va. at 371, 633 S.E.2d at 316. Further, "[i]n a criminal case, the burden is upon the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Syl. pt. 3, *State v. Frazier*, 229 W. Va. 724, 735 S.E.2d 727 (2012). *See also* Syl. pt. 4, *State v. Jenkins*, 195 W. Va. 620, 466 S.E.2d 471 (1995) ("Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction." Syl. pt. 20, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974)).

A review of the record reveals that the statements from the non-trial witness were not introduced to inculpate Mr. Bruffey. Rather, they were introduced to explain how the Sergeant came to identify Mr. Bruffey as a potential suspect and how the Sergeant located Mr. Bruffey. Second, Mr. Bruffey never denied owning the purple car. Third, there was no *Crawford* or *Mechling* violation because the non-trial statements were not testimonial

18

statements directed at establishing the facts of a past crime, but simply part of the *res gestae* of the Sergeant's investigation. Assuming, *arguendo*, that the statements were testimonial, they addressed an ancillary and uncontested fact, and, in light of all of the evidence against Mr. Bruffey, could not have made any difference in the jury's verdict. Lastly, another witness placed Mr. Bruffey's purple car at the scene of the first robbery, which evidence was not objected to by Mr. Bruffey. Accordingly, we find that the circuit court did not err in this regard.

### D. Probable Cause for Search Warrant

Finally, Mr. Bruffey argues that the affidavit upon which the issuance of the search warrant was based was insufficient to form probable cause. This Court has recognized:

> "To constitute probable cause for the issuance of a search warrant, the affiant must set forth facts indicating the existence of criminal activities which would justify a search and further, if there is an unnamed informant, sufficient facts must be set forth demonstrating that the information obtained from the unnamed informant is reliable." Syllabus point 1, *State v. Stone*, 165 W. Va. 266, 268 S.E.2d 50 (1980).

Syl. pt. 1, *State v. Hall*, 171 W. Va. 212, 298 S.E.2d 246 (1982).

The affidavit attached to Sergeant Droppleman's search warrant complaint relied heavily on the following: (1) a witness saw a purple car parked near the bank two days

19

before the second robbery; (2) Mr. Bruffey became nervous when the Sergeant questioned him about the robberies; and (3) a witness saw an unidentifiable man in a parking lot on the morning of the first robbery. Mr. Bruffey argues that the affidavit contained merely conclusory speculations. Our review of the affidavit, however, shows that Mr. Bruffey mischaracterizes Sergeant Droppleman's affidavit. It is detailed and sets forth ample grounds that establish probable cause. As such, it properly supported the issuance of the search warrant and does not constitute reversible error in this case.

## IV.

## CONCLUSION

Based on the foregoing, the circuit court's January 18, 2012, order, is affirmed.

Affirmed.