IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

**FILED**

**June 5, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0574

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

CARLOS ANGLE,
Defendant Below, Petitioner

Appeal from the Circuit Court of Marion County
Honorable Fred L. Fox, II, Senior Status Judge
Criminal Action No. 09-F-83

REVERSED AND REMANDED

Submitted: April 8, 2014
Filed: June 5, 2014

Robyn M. Danford, Esq.
Whiteman Burdette, PLLC
Fairmont, West Virginia
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Scott E. Johnson, Esq.
Senior Assistant Attorney General
Laura Young, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

AND

No. 13-0575

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

CARLOS ANGLE,
Defendant Below, Petitioner

Appeal from the Circuit Court of Marion County
Honorable Fred L. Fox, II, Senior Status Judge
Criminal Action No. 11-F-171

VACATED

Submitted: April 8, 2014
Filed: June 5, 2014

Eric K. Powell, Esq.
Powell Law Office
Parkersburg, West Virginia
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Scott E. Johnson, Esq.
Senior Assistant Attorney General
Laura Young, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

The Opinion of the Court was delivered PER CURIAM.

1.      "When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose.  It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b).  The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction." Syl. Pt. 1, *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994).

2.      "Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility.  Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986).  After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts.  If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b).  If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under  Rules 401 and 402 of

the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence." Syl. Pt. 2, *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994).

3.      "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syl. Pt. 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979).

4.      "A recidivist sentence under W.Va. Code § 61-11-19 (1943) (Repl.Vol.2010) is automatically vacated whenever the underlying felony conviction is vacated." Syl. Pt. 3, *Holcomb v. Ballard,* 232 W.Va. 253, 752 S.E.2d 284 (2013).

Per Curiam:

The petitioner and defendant below, Carlos Angle, appeals the April 17, 2013,

final order of the Circuit Court of Marion County sentencing him to imprisonment in the

penitentiary for life. The petitioner's sentence resulted from two separate convictions. He

was first found guilty by a jury of sexual abuse in the first degree on July 28, 2011.

Following that conviction, the State filed a recidivist information[1] against the petitioner that

resulted in a second jury conviction pursuant to West Virginia Code § 61-11-19 (2010)[2] on

---

[1]The State alleged that the petitioner had been previously convicted of the felony offense of extortion and two counts of the felony offense of unlawful wounding in addition to his conviction of first degree sexual abuse.

[2]West Virginia Code § 61-11-19 provides, in pertinent part:

> It shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence. Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person named in each, shall require the prisoner to say whether he is the same person or not. If he says he is not, or remains silent, his plea, or the fact of his silence, shall be entered of record, and a jury shall be impanelled to inquire whether the prisoner is the same person mentioned in the several records. If the jury finds that he is not the same person, he shall be sentenced upon the charge of which he was convicted as provided by law; but if they find that he is the same, or after being duly cautioned if he acknowledged in open court that he is the same person, the court shall sentence

1

January 30, 2013. The petitioner appealed each conviction separately,[3] but this Court

consolidated the appeals for purposes of argument and decision by order entered February

11, 2014.

Upon consideration of the parties' briefs and oral argument, as well as the

submitted records and pertinent authorities, we find merit to the petitioner's contention that

the circuit court committed reversible error during his first trial by allowing the admission

of certain evidence pursuant to Rule 404(b) of the West Virginia Rules of Evidence.[4]

---

> him to such further confinement as is prescribed by section
> eighteen [§ 61-11-18] of this article on a second or third
> conviction as the case may be.

[3]The petitioner was appointed counsel to appeal both of his convictions, but he retained private counsel to assist with the appeal of his recidivist conviction, resulting in separate appeals being filed with this Court.

[4]Rule 404(b) of the West Virginia Rules of Evidence states:

> *Other crimes, wrongs, or acts.*–Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Accordingly, for the reasons set forth below, we reverse the petitioner's conviction of sexual abuse in the first degree and vacate his recidivist conviction.

## I. Factual and Procedural Background

The petitioner's conviction of sexual abuse in the first degree resulted from events that occurred on October 30, 2008. At approximately 2:00 a.m. that day, the petitioner and two other men went to the apartment of Kassandra Huffman and her boyfriend, Larry Broadwater, in Fairmont, West Virginia. The petitioner was acquainted with Ms. Huffman and her boyfriend because he had previously lived in the same neighborhood. According to Ms. Huffman, the petitioner and the other men were drinking beer and were already intoxicated. Another friend of Ms. Huffman and Mr. Broadwater, Josh Dieffenbauch, arrived a short time later. Thereafter, the two men who had arrived with the petitioner left the apartment. At some point, Mr. Broadwater told the petitioner that he also needed to leave. Mr. Broadwater indicated that he needed to go to bed because he was scheduled to work that morning. The petitioner and Mr. Dieffenbauch left the apartment at the same time.

According to Mr. Dieffenbauch, before he parted ways with the petitioner, the petitioner told him that he was going back to Ms. Huffman's apartment to sleep on her couch. Mr. Dieffenbauch then sent a text message to Ms. Huffman, telling her, "Don't answer the door. It's Carlos."

3

Ms. Huffman was asleep and did not hear Mr. Broadwater leave for work that morning. At the petitioner's trial, Ms. Huffman testified that when she woke up she realized that someone was in her room. She then became aware that the petitioner was in her bed with his shirt off, his pants around his knees and his penis between her legs. Ms. Huffman testified that the petitioner had also pulled her underwear down around her knees. According to Ms. Huffman, she leapt from the bed and ran into the bathroom saying, "Hey, man, what are you going [sic]?" and "Get the f*** out of my house." She locked herself in the bathroom and did not come out until she heard the petitioner leave the apartment. She then called Mr. Broadwater and 911.

Sergeant William Pigott of the Fairmont Police Department responded to the 911 call. After speaking with Ms. Huffman, Sergeant Pigott located the petitioner and interviewed him.[5] The petitioner confirmed that he had been at Ms. Huffman's apartment, stating that Ms. Huffman and Mr. Broadwater wanted to obtain drugs from him. The petitioner denied using or possessing drugs. He stated that Ms. Huffman had offered to have sex with him if he would obtain drugs for her. The petitioner admitted leaving the apartment, and then returning, stating he believed Ms. Huffman had offered to have sex with him even though she understood that he did not trade, sell or use drugs.

---

[5]Officer Pigott testified that at the time of the interview, the petitioner had a blood alcohol level of .141 according to a preliminary breath test, but he did not otherwise exhibit symptoms of intoxication.

4

As a result of these events, the petitioner was indicted on one count of burglary and one count of sexual assault in the second degree. Prior to the petitioner's trial on these charges, the State filed a notice of intent to use evidence pursuant to Rule 404(b) of the West Virginia Rules of Evidence, seeking to present evidence that the petitioner had been subsequently charged with sexual assault in the second degree, sexual abuse in the first degree and conspiracy to commit a felony. These offenses were allegedly committed by the petitioner in June 2009, while he was at a party in the neighborhood where Ms. Huffman lived. The alleged victims were a female adult and a female juvenile. Following a hearing on the matter, the trial court ruled that the evidence would be admissible at trial.

At trial, the State's primary witness was Ms. Huffman. In addition, the State presented the 404(b) evidence through the testimony of Officer Pigott who told the jury that he had investigated allegations that the petitioner had sexually assaulted and/or abused a female adult and a juvenile at a party in June 2009. Officer Pigott testified that he had interviewed the petitioner with regard to these allegations and that the petitioner had stated that any sexual contact he had with the adult victim had been consensual. While Officer Pigott testified that there was also a juvenile victim, he never explained the basis for the allegation.

After the State presented its case, the petitioner moved for a judgment of acquittal. The court denied the motion with regard to the burglary charge, but granted, in

5

part, the motion with regard to the charge of sexual assault in the second degree, finding that the jury could only consider the lesser included offense of first degree sexual abuse as the State had failed to present evidence to establish the greater offense.[6] Following deliberations, the jury acquitted the petitioner of the burglary charge but found him guilty of sexual abuse in the first degree.

Thereafter, the State filed a recidivist information against the petitioner and obtained a jury conviction on January 30, 2013. At the petitioner's sentencing hearing on March 19, 2013, the court ordered that he be confined in the penitentiary for life pursuant to West Virginia Code § 61-11-18(c) (2010).[7] The final order was entered on April 17, 2013, and these appeals followed.

---

[6]Pursuant to West Virginia Code § 61-8B-4(a)(1) (2010), a person is guilty of sexual assault in the second degree when "[s]uch person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion." Under West Virginia Code § 61-8B-7(a)(1) (2010), sexual abuse in the first degree occurs when a "person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion." At trial, Ms. Hoffman testified that when she woke up, she felt the petitioner's penis between her legs. During cross-examination she stated, "Well, I didn't get raped. He didn't penetrate my vagina, in my vagina."

[7]West Virginia Code § 61-11-18(c) states:

> "When it is determined, as provided in section nineteen [§61-11-19] of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life."

## II. Standard of Review

The only assignment of error necessary for us to consider in these consolidated appeals concerns the circuit court's admission of evidence at the petitioner's first trial pursuant to Rule 404(b). This Court has explained that

> [t]he standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W.Va. 294, 310-311, 470 S.E.2d 613, 629-30 (1996). With these standards in mind, we consider the parties' arguments.

## III. Discussion

The petitioner contends that the circuit court failed to make the requisite findings necessary for a determination that the evidence offered by the State at his first trial was admissible pursuant to Rule 404(b). This Court set forth the prerequisites for admission of evidence under Rule 404(b) in *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), holding that

> [w]hen offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being

7

offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

193 W.Va. at 151, 455 S.E.2d at 520, syl. pt. 1. In addition, this Court instructed in

*McGinnis* that

> [w]here an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

193 W.Va. at 151, 455 S.E.2d at 520, syl. pt. 2.

As set forth above, our review begins with an analysis of whether the trial court committed clear error in determining that there was sufficient evidence to show that the other acts occurred. There were two separate pieces of evidence offered by the State pursuant to Rule 404(b): (1) that the petitioner sexually assaulted another adult female and (2) that the petitioner sexually abused a juvenile.[8] Although the offenses allegedly occurred on the same night, and although the petitioner was charged for both offenses in the same indictment, each piece of evidence should have been considered separately to determine whether there was sufficient evidence that the petitioner committed each act. As noted, these other alleged acts occurred subsequent to the alleged offenses in this case. Thus, while the petitioner had been indicted, he had not been convicted of these other acts at the time of his trial in the case at bar.

Upon review of the record, we are unable to locate any instance where the trial court made a finding that the alleged other acts were committed by the petitioner. The 404(b) hearing was held on July 26, 2011. At the end of the hearing, the trial court simply made a conclusory statement, declaring, "The Court will allow the admission of the evidence. I think it's proper 404b evidence." The trial court then instructed the State to prepare limiting

[8]The petitioner was also charged with conspiracy in connection with these other alleged offenses. Apparently, the adult victim reported that she had been sexually assaulted by at least two men. The fact that the petitioner was also charged with conspiracy was not submitted to the jury.

instructions to be given at trial regarding the 404(b) evidence and to also prepare an order reflecting the court's ruling. No order was ever entered.[9]

Even if we were to assume that the trial court implicitly found that the petitioner committed the other alleged acts by ruling that the evidence was admissible, the testimony presented at the 404(b) hearing did not support such a finding. The 404(b) evidence was presented through the testimony of Officer Pigott. He testified that in June 2009, a female adult and a female juvenile each alleged that they had been sexually abused and/or assaulted at a party in the same neighborhood where Ms. Huffman resided. Officer Pigott stated that the petitioner and another male were named as persons of interest; that he had interviewed the petitioner concerning the allegations; and that the petitioner had maintained that any sexual contact he had with the adult female was consensual. Officer Pigott further testified that the petitioner denied having sexual intercourse or any interaction with the alleged juvenile victim and that "he didn't press the issue further" during the interview of the petitioner. Thus, the trial court was not presented with any specific evidence with regard to the allegations made by the juvenile victim. Given these facts, we see no basis for the trial court to have found by a preponderance of the evidence that the petitioner committed these other acts.

---

[9]The State acknowledges in its brief that no written order was entered following the 404(b) hearing.

10

While this Court recently found that evidence of a subsequent uncharged offense was admissible pursuant to Rule 404(b) in *State v. Bruffey,* 231 W.Va. 502, 745 S.E.2d 540 (2013)*,* the facts of that case are substantially different from the case at bar. In *Bruffey*, the defendant was charged with a bank robbery, and the State introduced evidence at his trial of a subsequent robbery the defendant was suspected of committing; no charges had been filed against the defendant with respect to the second robbery. We found no error in the admission of the evidence regarding the second uncharged bank robbery for the purpose of showing a common plan, scheme and identity because there was substantial forensic evidence linking the defendant to both crimes. *Id.* at —, 745 S.E.2d at 549. In this case *sub judice*, however, there was not sufficient evidence for the trial court to have concluded that the petitioner committed the subsequent alleged offenses. The State merely put forth evidence that the petitioner had been accused of committing additional sexual offenses, acknowledging that he denied the accusations.

In addition to failing to make the requisite finding that the alleged other acts were committed by the petitioner, the trial court erred in concluding that the evidence was presented for a legitimate purpose. At the 404(b) hearing, the State indicated that it was offering the evidence to show the petitioner's lustful disposition toward Ms. Huffman, as well as intent, motive and absence of mistake. At trial, the court instructed the jury as follows:

11

This evidence was admitted for the limited purpose of explaining whether the defendant had motive, explain an absence of mistake in [sic] apparent mode of operation, whether the defendant exhibited the lustful disposition toward the alleged victim, as well as in this instance, for which the defendant is on trial.

As noted by the petitioner, it is well-established that "[i]t is impermissible for collateral sexual offenses to be admitted into evidence solely to show a defendant's improper or lustful disposition toward his victim." Syl. Pt. 7, *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). While this holding was modified by this Court in *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990), to allow such evidence where the victim is a child, the decision was not modified with respect to adult victims.[10]

Recognizing that the 404(b) evidence should not have been admitted to show the petitioner's lustful disposition toward the victim, the State argues that we should extend

---

[10]Syllabus point two of *State v. Edward Charles L.* states:

Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment. To the extent that this conflicts with our decision in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986), it is overruled.

183 W.Va. at 643, 398 S.E.2d at 125.

12

our ruling in *Edward Charles L.* to adults, pointing out that such a ruling would be consistent with federal law.[11]  We decline to do so, however, because as we explained in *Dolin:*

> To recognize a sexual propensity exception in addition to the numerous exceptions to the collateral crime rule would provide a convenient path to damage a defendant's character and would sweep additional sexual offenses into evidence which would obviously prejudice and confuse a jury in its consideration of the crime charged in the indictment.  What renders the reasoning of those courts which have adopted a sexual propensity exception so anomalous is their failure to acknowledge that sexual crime cases are by their very nature likely to be highly offensive to the average jury.  Thus, the ability to further prejudice the jury by admitting additional collateral sexual offenses is even more apparent.
>
> Bearing on this problem is the fact that the guilt of a defendant in a sexual offense case can be based solely on the uncorroborated testimony of the victim.  We held in Syllabus Point 5 of *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234, 31 A.L.R.4th 103 (1981), that the uncorroborated testimony of the victim in a sexual offense case is sufficient to uphold a conviction, unless the testimony is inherently incredible.  *See also* Syllabus Point 4, *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979);  *State v. Golden*, 90 W.Va. 496, 111 S.E. 320 (1922).  For this reason, courts should be particularly wary of collateral sexual offense evidence and should be cautious in admitting such evidence.

176 W.Va. at 695, 347 S.E.2d at 215.  Accordingly, we find that the trial court erred by admitting the 404(b) evidence for the purpose of establishing the petitioner's lustful disposition toward Ms. Huffman.

---

[11]*See* Fed. R. Evid. 413.

13

We further find that the trial court erred when it admitted the evidence to show motive, absence of mistake, and mode of operation because the State failed to establish how the evidence related to these specific purposes. In that regard, the State never attempted to explain how evidence of subsequent criminal charges could establish a motive to commit the offenses charged in the case at bar, which allegedly occurred nine months earlier. Other than the obvious impermissible inference that one who committed a later sexual assault would have probably been motivated to commit the earlier one, the State provided no evidence to suggest how sexual offenses allegedly committed nine months later related to motive to commit these offenses.

With regard to the purpose of absence of mistake, the State again failed to give any explanation as to what mistake, precisely, it wished to dispute. The petitioner never offered any type of defense that might have been construed as a "mistake." The petitioner did not testify at trial, nor did he present any other witnesses. During closing argument, his counsel asserted that Ms. Huffman's "story" was simply not credible.

Finally, it appears that the State attempted to utilize the 404(b) evidence for the purpose of showing that the petitioner had a mode of operation. We have stated that "if the [other act] evidence is offered to show intent, knowledge, or *modus operandi*, a showing of similarity is usually necessary to demonstrate its probative value." *McGinnis*, 193 W.Va. at 156, 455 S.E.2d at 525. The State was unable to make such a showing because the alleged

14

sexual offenses occurred under vastly different circumstances. The evidence at trial indicated that Ms. Huffman was sober when the alleged offense occurred. She was home alone, and the petitioner allegedly broke into her home and attempted to sexually assault her while she slept. The victims of the subsequent alleged offenses were admittedly intoxicated. Further, the alleged offenses were committed during a party. The only similarity between the alleged offenses was that they occurred in the same neighborhood. Given these circumstances, the circuit court erred in finding that the evidence was admissible to establish a mode of operation.

The final step of our review concerns the trial court's evaluation of the evidence under Rule 403 of the West Virginia Rules of Evidence, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We have stated that when a trial court evaluates the admissibility of evidence pursuant to Rule 404(b), "[t]he balancing necessary under Rule 403 must affirmatively appear on the record." *McGinnis,* 193 W.Va. at 156, 455 S.E.2d at 525. As previously discussed, the trial court simply concluded at the end of the *McGinnis* hearing that the evidence would be admissible under Rule 404(b). It is clear that no balancing test was ever conducted.

15

Given all the above, we find that the trial court failed to conduct a thorough analysis of the 404(b) evidence at issue as required by *McGinnis*, and erred in admitting at trial the testimony concerning subsequent sexual offenses allegedly committed by the petitioner. The State acknowledges that trial court failed to perform the Rule 403 balancing test but argues that the admission of the 404(b) evidence was harmless error. We disagree.

This Court has held:

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. Pt. 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979). In *McGinnis*, we observed "that Rule 404(b) determinations are among the most frequently appealed of all evidentiary rulings and the erroneous admission of evidence of other acts is one of the largest causes of reversal of criminal convictions." 193 W.Va. at 153, 455 S.E.2d at 522. We further recognized that "where a trial court erroneously admits Rule 404(b) evidence, prejudicial error is likely to result." *Id.*

16

Because the State's case rested solely upon the claims of Ms. Huffman and because the evidence of the other alleged bad acts by the petitioner improperly bolstered her testimony, we conclude that its admission had an unfairly prejudicial effect on the jury. The likelihood of a conviction in this instance, without the introduction of other sexual offenses allegedly committed by the petitioner, one of which was against a child, was considerably less. Thus, we find that the improper admission of the 404(b) evidence was not harmless error. Consequently, the petitioner's conviction of sexual abuse in the first degree must be reversed.

Because we have reversed the petitioner's sexual abuse conviction, we must vacate his recidivist conviction. As this Court explained in syllabus point 3 of *Holcomb v. Ballard,* 232 W.Va. 253, 752 S.E.2d 284 (2013), "A recidivist sentence under W.Va. Code § 61-11-19 (1943) (Repl.Vol.2010) is automatically vacated whenever the underlying felony conviction is vacated."

## IV. Conclusion

For the reasons set forth above, the petitioner's conviction of first degree sexual abuse is reversed, and the case is remanded to the circuit court for a new trial and further proceedings consistent with this opinion. The petitioner's recidivist conviction is vacated.

No. 13-0574 - Reversed and remanded.

17

No. 13-0575 - Vacated.