# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0206** (Summers County 15-F-50)

**Michael Wayne Palmer,**
**Defendant Below, Petitioner**

**FILED**

**November 8, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael Wayne Palmer, by counsel Paul R. Cassell, appeals the Circuit Court of Summers County's February 8, 2018, order sentencing him to life in prison. Respondent State of West Virginia, by counsel Shannon Frederick Kiser, filed a response. Petitioner filed a reply. On appeal, petitioner asserts that the circuit court erred in denying his motion for a mistrial, admitting evidence in violation of Rule 404(b) of the West Virginia Rules of Evidence, failing to give a proper limiting instruction with regard to a witness's testimony, and refusing to admit the personnel file of an investigating officer. Petitioner also asserts that there was cumulative error.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 16, 2015, petitioner approached Allen Vandall, manager of Gene's Marathon Store, in the parking lot of the gas station, brandished a black pistol, and forcefully stole a bank bag containing $1,890.00 in cash, checks, and credit card receipts. After police officers arrived at the scene, Mr. Vandall and Amanda Moses, a store clerk, reported that petitioner had been the one to rob Mr. Vandall. Mr. Vandall and Ms. Moses stated they recognized petitioner's voice based upon his frequent visits to the store prior to committing the crime. A subsequent investigation connected petitioner to numerous armed robberies throughout the area based upon petitioner's method and similar disguise.

A Summers County Grand Jury returned a single-count indictment against petitioner on November 17, 2015, charging him with one count of first-degree robbery. Petitioner filed several pretrial motions seeking the suppression of evidence obtained in a search of his parents'

1

residence, including grommets and zippers surmised to be from a bank bag found in the remnants of a fire, and police scanners and scanner codes found in the home, and testimony regarding the same; the disclosure of the criminal record and any inducements made to a jailhouse informant who claimed that petitioner had confessed to committing the robbery to him; and the limitation of any prior bad act evidence pursuant to Rule 404(b) of the West Virginia Rules of Evidence.[1] Petitioner also requested the production of the personnel file of Sgt. David McMillen of the West Virginia State Police, the officer who conducted the initial investigation into petitioner's crimes. A hearing was held on petitioner's pretrial motions on January 27, 2016. The State acknowledged that it did not intend to introduce evidence of any zippers or grommets, or any police scanners, scanner codes, or handcuff keys found at petitioner's parents' residence.

By order entered on July 6, 2016, the circuit court ordered the State to produce any statements given by the jailhouse informant, Gary Toler, and the personnel file of Sgt. McMillen. The State subsequently moved for a protective order regarding the personnel file and argued that the evidence was improper impeachment material, was irrelevant, and that the acts for which Sgt. McMillen had been disciplined had no bearing on his character for truthfulness.[2] At a hearing on the matter, the circuit court granted the protective order and stated that it would review the file for relevancy. The circuit court later denied petitioner's motion to introduce the personnel file, but petitioner raised the issue again at a status hearing, arguing that the information in Sgt.

---

[1]West Virginia Rules of Evidence Rule 404(b) provides:

(b) Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice Required. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Any party seeking the admission of evidence pursuant to this subsection must:

(A) provide reasonable notice of the general nature and the specific and precise purpose for which the evidence is being offered by the party at trial; and

(B) do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice.

[2]The record indicates that Sgt. McMillen's personnel file contained information regarding his reprimand for sexual misconduct.

McMillen's file indicated dishonest or immoral conduct. The circuit court agreed to take the matter under further advisement.[3]

On February 21, 2017, the State moved the court to determine the admissibility of certain evidence prior to trial and filed a notice of intent to use evidence pursuant to Rule 404(b) regarding petitioner's prior bad acts, including other robberies committed with the same common plan or mode of operation in Fayette County, West Virginia. The circuit court held several hearings on the matter in March of 2017. The State produced the testimony of Detective Kevin Willis of the Fayette County Sheriff's Department, who testified that, at the time petitioner was charged, he was investigating four other robberies that occurred in Fayette County. The robberies were similar to the robbery allegedly perpetrated by petitioner in that the perpetrator wore several layers of heavy clothing and disguised his voice through the use of an accent. While the suspect always fled on foot, video surveillance from one location showed the perpetrator getting into a gold Jeep Grand Cherokee that was later identified as belonging to petitioner. After locating petitioner, he fled from officers and began throwing items out of the vehicle, including cigarettes which were traced to cartons that had been stolen from the stores. Detective Willis identified witnesses to these other robberies, including Julia Bria, Kelly Asbury, and Linda Garten. Detective Willis admitted that these witnesses could not positively identify petitioner as the perpetrator.

Mr. Toler also testified at one of the pretrial hearings. He revealed that he shared a unit with petitioner in the Southern Regional Jail. While there, Mr. Toler testified that petitioner confessed to the numerous robberies he committed in Fayette and Summers Counties. Petitioner told Mr. Toler that he would wear "multiple layers of clothing to make himself look fat, large, always carried a weapon, and also wore a mask." Mr. Toler also reported that petitioner admitted to using an accent to disguise his voice and to leaving the scene on foot before fleeing back to his vehicle. Lastly, Mr. Toler testified that, during a later encounter, petitioner intimated that he committed the robbery in the underlying criminal case. Based on this evidence, the circuit court ordered that both the testimony of Mr. Toler and the Rule 404(b) evidence would be admissible.[4]

Petitioner's trial commenced on June 7, 2017. The State presented the testimony of several witnesses, including Mr. Vandall, Ms. Moses, Detective Willis, Mr. Toler, Sgt. McMillen, and the witnesses to the Fayette County robberies. During the State's opening

---

[3]Following this hearing, petitioner requested new counsel at a status hearing held on September 12, 2016. Petitioner was granted new counsel and the matter was continued several times.

[4]During the final pretrial hearing held in May of 2017, the court was advised that, although petitioner had been charged with the four robberies in Fayette County, those charges were being dismissed. The circuit court reaffirmed its prior ruling allowing the admission of Rule 404(b) evidence with regard to those robberies, but clarified that petitioner could introduce evidence that those charges were dismissed. Petitioner challenged the circuit court's ruling and argued that the witnesses named by Detective Willis would need to testify at trial. The State agreed to call those witnesses.

statement, the prosecutor referenced a police scanner and scanner codes found in the front seat of petitioner's car. Petitioner did not object. Also, during Sgt. McMillen's testimony, he referenced finding zippers and metal grommets in the remnants of a fire on petitioner's parents' property. Petitioner objected to this testimony, arguing that both parties had previously agreed not to disclose such evidence. Although the State agreed not to argue any further evidence regarding the zipper and the grommets, petitioner requested a mistrial, which the circuit court denied. Petitioner refused any curative instruction, preferring to continue on. At that time, petitioner also raised issue with the State's intention to continue referencing the police scanner and scanner codes, but the circuit court overruled that objection.

Mr. Vandall and Ms. Moses testified that on the night of the robbery, petitioner jumped from behind a dumpster and pointed a gun at Mr. Vandall, demanding money. Both Mr. Vandall and Ms. Moses testified that they knew petitioner was the robber because he had frequented their store multiple times a week and they recognized his voice. Both described petitioner as wearing multiple layers of clothing in what they assumed was an effort to disguise his identity, wearing a mask, brandishing a black handgun, and leaving the scene on foot.

Mr. Toler testified that, while housed in the same unit in jail, petitioner admitted to committing several robberies wherein he attempted to disguise his identity by wearing multiple layers of clothing, wearing a mask, and using a fake accent.[5] Several months later, Mr. Toler encountered petitioner once again while he was being booked for his arrest based upon the underlying crime. Mr. Toler testified that he told petitioner he had seen petitioner on television with regard to the underlying robbery and that petitioner simply grinned, confirming Mr. Toler's belief that petitioner was involved.

The State also presented the testimony of three witnesses to robberies committed in Fayette County. Prior to their testimony, the circuit court gave a limiting instruction, informing the jury about Rule 404(b) evidence and how it was to be considered only for the purposes of proving identity, common scheme, or mode of operation. Each witness testified that they had been robbed by a man who attempted to disguise his identity by wearing multiple layers of clothing, wearing a mask, and using a fake accent. Each witness testified that the robber brandished a black handgun and left the scene on foot. None of the victims could identify petitioner as the perpetrator of the robberies. Detective Willis testified in regard to these robberies, including that a surveillance video recovered from one of the gas stations robbed showed a vehicle that was later located at petitioner's residence. Detective Willis also testified that, after later initiating a stop of the vehicle, cigarettes were recovered which were tied to one of the robberies.

Petitioner presented the testimony of one witness who reported that petitioner was at the witness's home on the day of the robbery. However, the State produced the testimony of Sgt. McMillen, who rebutted the witness's testimony by reporting that he had spoken to the witness

---

[5]Petitioner objected to this testimony, but the circuit court overruled his objection. Petitioner did not request a limiting instruction, and the circuit court did not provide one to the jury prior to Mr. Toler's testimony.

and that the witness informed him that he was unable to provide a specific date or time that petitioner was at his home. During closing arguments, the State again referenced the scanner codes found in petitioner's car, but petitioner did not object. At the close of all evidence, the circuit court again provided a limiting instruction regarding the Rule 404(b) evidence presented by the State. Following deliberations, the jury returned a guilty verdict on the charge of first-degree robbery. Subsequently, the State filed a recidivist information, alleging that petitioner had previously been convicted of several other crimes. In accordance with West Virginia Code § 61-11-18, the circuit court sentenced petitioner to life imprisonment.[6] It is from the February 8, 2018, sentencing order that petitioner appeals.

On appeal, petitioner first argues that the circuit court erred in denying his request for a mistrial. According to petitioner, the prosecutor referenced several items during the trial that the former prosecutor agreed not to discuss. These allegedly prejudicial items included a zipper, metal grommets, police scanners, scanner codes, and clothing items. Petitioner asks this Court to (1) analyze these comments under *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995), and (2) to find that the prosecutor's remarks had a "tremendous tendency" to mislead the jury, were repeatedly referenced during the trial, prejudiced petitioner, and deliberately diverted the jury's attention to extraneous issues. Further, petitioner contends that no curative instruction could undo the damage that was caused by the remarks and that a mistrial was warranted. We disagree.

We have long held that

> [t]he decision to declare a mistrial, discharge the jury and order a new trial in a criminal case is a matter within the sound discretion of the trial court. A trial court is empowered to exercise this discretion only when there is a "manifest necessity" for discharging the jury before it has rendered its verdict. This power of the trial court must be exercised wisely; absent the existence of manifest necessity, a trial court's discharge of the jury without rendering a verdict has the effect of an acquittal of the accused and gives rise to a plea of double jeopardy.

*State v. Lowery*, 222 W. Va. 284, 288, 664 S.E.2d 169, 173 (2008) (citations omitted). Regarding the allegedly improper statements made by the State, this Court has previously held that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." *Sugg*, 193 W. Va. at 393, 456 S.E.2d at 474, syl. pt. 5. Indeed, "[t]he test is whether the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 405, 456 S.E.2d at 486. The determination of whether improper prosecutorial argument "has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial." *Id.* As we held in Syllabus Point 6 of *Sugg*,

---

[6]West Virginia Code § 61-11-18(c) sets forth that "[w]hen it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life."

5

[f]our factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Id.* at 393, 456 S.E.2d at 474.

At the outset, we note that petitioner's motion to limit testimony as to the existence of a police scanner, scanner codes, or a handcuff key specifically referenced items found in the home of petitioner's parents. The motion does not reference a police scanner or scanner codes found in petitioner's car, nor did petitioner argue those items at the suppression hearing. Further, petitioner cites to no motion, nor any portion of the record, wherein he requested that the circuit court limit the testimony at trial with regard to clothing found in petitioner's parents' residence.[7] As such, we find no error in any reference to these items. However, to the extent that the State referenced items it previously agreed not to reference, we now review those statements under Syllabus Point 6 of *Sugg*.

Petitioner contends that the State impermissibly referenced items during the testimony of Sgt. McMillen and its closing argument.[8] Specifically, Sgt. McMillen referenced finding a zipper and metal grommets in a fire, which occurred at petitioner's parents' home after police arrived to question petitioner. The State again referenced the fire, but not the grommets or zipper, during its closing arguments. Turning to the first factor from *Sugg*, we note that the degree to which the prosecutor's remarks have a tendency to mislead the jury and prejudice petitioner is minimal. The remarks were brief and in reference to the investigation which Sgt. McMillen conducted following the robbery. Petitioner failed to object to the first reference of the grommets and zipper, but successfully objected to further discussion of the items, preventing the jury from hearing any detailed testimony on those items. Petitioner refused a curative instruction, preferring instead to move on. Further, the State did not reference these items specifically during its closing statement and only briefly mentioned investigating a fire at petitioner's parents' home.

---

[7]At the suppression hearing, petitioner raised issue with shoes taken from his parents' home. However, the clothing of which petitioner complains on appeal included items such as sweatshirts and sweatpants and not the shoes taken from his parents' home.

[8]Petitioner also argues that the State impermissibly referenced certain items during its opening statement. A review of the record reveals that the items mentioned during the opening statement were items that petitioner had not previously sought to suppress, including clothing, and the scanner and codes found in his car. Further, we note that the zipper and grommets were not specifically referenced in the State's closing argument. However, the State did reference the fire in which they were found. Therefore, we will address that statement in accordance with *Sugg*.

The references likewise fail to satisfy the second factor of *Sugg*. While petitioner mentions several instances in which the State impermissibly referenced certain items, only two instances dealt with items the State agreed not to reference—once during closing argument and once during Sgt. McMillen's testimony. As noted, these references were brief. Moreover, absent these remarks, the evidence presented to establish guilt was strong. Both Mr. Vandall and Ms. Moses testified that petitioner was the perpetrator of the robbery. Both testified that they had previously interacted with petitioner on numerous occasions because he frequently entered the gas station to buy items. Both testified that they knew petitioner was the robber by his voice, given their frequent interactions with him. Further, Mr. Vandall also indicated that the perpetrator of the robbery walked similarly to petitioner. Given this testimony, it is clear that sufficient evidence existed for the jury to find petitioner guilty of the crime, even in light of the impermissible statements by the prosecutor. Lastly, the State did not deliberately place the statements before the jury to divert their attention. Indeed, the prosecutor stated that she was unaware of any agreements the prior prosecutor made on behalf of the State due to the absence of any order on the issue of suppression. After the circuit court clarified that the State had agreed not to reference the grommets and zippers, the prosecutor made no further reference to those items. Again, any reference to scanners or scanner codes were specifically clarified as those found in petitioner's car, not his parents' residence. Based on the foregoing, we find that the State's references to any items it had previously agreed not to discuss were not so prejudicial as to result in a manifest injustice necessitating a mistrial. Accordingly, petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in admitting evidence of prior bad acts pursuant to Rule 404(b).[9] Petitioner contends that the circuit court erred in allowing into

---

[9]As part of his argument, petitioner claims that his right to a fair trial was not adequately preserved because, in the name of Rule 404(b) evidence, Detective Willis was permitted to testify to an investigation regarding the stolen cigarettes found in petitioner's possession. Petitioner claims that the admission of this evidence was plain error because it violated his rights under the Confrontation Clause since he was not able to question the person who informed Detective Willis that the cigarettes were stolen. Specifically, petitioner claims that the statement is clearly testimonial and that there was no showing that the witness was unavailable for trial.

"To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). In regard to petitioner's Confrontation Clause claim, we note that

"[p]ursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." Syllabus Point 6, *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006).

(continued . . .)

evidence Rule 404(b) evidence which was not sufficiently proven to be acts committed by petitioner. Specifically, petitioner argues that the evidence presented regarding the other robberies committed in Fayette County was insufficient to prove that petitioner was the perpetrator in those cases. Petitioner argues that none of the store clerks who testified at trial testified at the *McGinnis*[10] hearing held on the matter, the surveillance video referenced by Detective Willis was never admitted into evidence, and no evidence regarding one of the robberies was offered at trial. Further, the store clerks' testimony varied greatly. Despite the fact that those witnesses testified that the perpetrator used an accent, no accent was reported by either Mr. Vandall or Ms. Moses. Further, one clerk reported that the perpetrator used a mask to hide his face, while another testified that a blanket or towel had been used to obscure the perpetrator's identity. None of the clerks could positively identify petitioner as the perpetrator of those

---

Syl. Pt. 1, *State v. Frazier*, 229 W. Va. 724, 735 S.E.2d 727 (2012). However, even if we assume petitioner's contention is true, we find the introduction of such evidence was harmless. We have stated that violation of a constitutional right constitutes reversible error unless that error is harmless beyond a reasonable doubt. *Mechling*, 219 W. Va. at 371, 633 S.E.2d at 316. Further, in *State v. Bruffey*, 231 W. Va. 502, 745 S.E.2d 540 (2013) this Court addressed a similar situation wherein a police officer testified that he identified the defendant's car because a witness reported that the defendant's car was near the scene of the crime. *Id.* at 512, 745 S.E.2d at 550. The defendant in *Bruffey* argued that the officer's testimony violated the Confrontation Clause because the witness was not present at trial. This Court held that the statement of the nontrial witness was harmless error because the statement had not been introduced to inculpate the defendant, the defendant had never denied owning the vehicle in question, and the statement was simply part of the res gestae of the officer's investigation. We find the same to be true for this case.

First, Detective Willis' comment about the witness who reportedly purchased stolen cigarettes from petitioner was not introduced to inculpate petitioner in the crime charged. Rather, it was presented as part of the Rule 404(b) evidence establishing a common scheme or mode of operation with regard to the Fayette Country robberies. While petitioner did not deny that the cigarettes were his, like the defendant in *Bruffey*, we emphasize that petitioner was observed throwing cigarettes out of his car while fleeing the police, those cigarettes were recovered, and their tax stamp was traced to the cigarettes stolen in one of the robberies. As such, even apart from this seemingly corroborating statement by the nontrial witness, Detective Willis gathered other cigarettes during the course of the investigation that also connected petitioner to the crime. Additionally, this knowledge was part of the res gestae of the officer's investigation. Lastly, we note that contrary to petitioner's assertion, Detective Willis testified that the nontrial witness was deceased as of the time of the trial.

Again, even assuming that petitioner's contentions were true that there was an error that was plain and affected his substantial rights, the nontrial witness's statement did not seriously affect the fairness of the trial given the facts of this case. Any error herein was harmless.

[10]*State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

8

robberies. According to petitioner, the evidence presented was simply insufficient to support a finding that petitioner was the perpetrator of those robberies. We disagree.

We have held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to a review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). "Our function . . . is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion." *McGinnis*, 193 W. Va. at 159, 455 S.E.2d at 528.

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, the rule goes on to provide that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The procedure for admitting evidence under Rule 404(b) is outlined in Syllabus Point 2 of *McGinnis* as follows:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

193 W. Va. at 151, 455 S.E.2d at 520. The record shows, and petitioner concedes, that the circuit court held a *McGinnis* hearing at which the State presented evidence from Detective Willis and Mr. Toler regarding the Fayette County robberies. Evidence presented at that hearing included Detective Willis's testimony that petitioner was a suspect in those robberies because his car was placed at the scene. Further, the cigarettes found in petitioner's possession were traced to the cigarettes stolen in one of the robberies. Mr. Toler corroborated this evidence by testifying that petitioner admitted to committing a string of robberies in the area and admitted to employing methods similar to that of the perpetrator of those robberies. Contrary to petitioner's argument, the circuit court concluded that "there's enough evidence to meet the State's burden of proof to show by a preponderance of the evidence that [petitioner] was involved in those other robberies." The circuit court also determined that the evidence was relevant and that its probative value

9

outweighed any prejudicial effect. Finally, the State told the jury numerous times that it was to consider the evidence only for the purpose of determining a common scheme or mode of operation, and the circuit court provided a limiting instruction prior to the store clerk's testimony and its instructions to the jury. Given the evidence presented and the circuit court's compliance with the procedure set forth in *McGinnis*, we find no abuse of discretion in the circuit court's decision to admit the evidence of which petitioner complains. Therefore, petitioner is entitled to no relief.

Petitioner also argues that the circuit court erred in failing to provide a limiting instruction prior to Mr. Toler's testimony, which included testimony regarding Rule 404(b) evidence. Petitioner concedes that he did not request a limiting instruction at this time, but claims that the circuit court's failure to provide one was plain error. Upon our review, we find that any error was harmless under the facts of this case.

Petitioner correctly notes that in *McGinnis*, this Court held that "[a] limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence." *Id.* at 151, 455 S.E.2d at 520, syl. pt. 2, in part. However, this Court also noted that "*where requested*, the trial court is required to give a limiting instruction." *Id.* at 156, 455 S.E.2d at 525 (emphasis added). Further, although this Court emphasized that "we strongly recommend that the instruction be given unless it is objected to by the defendant," we also noted that "a trial court is not obligated to give a limiting instruction unless requested." *Id.* Here, petitioner did not raise any objection to the circuit court's failure to provide a limiting instruction. Nevertheless, to the extent that the circuit court might have erred in failing to provide a limiting instruction prior to Mr. Toler's testimony, we find any error to be harmless for the following reasons. First, and most importantly, the circuit court provided a limiting instruction prior to the store clerks' testimony regarding the Rule 404(b) evidence surrounding the Fayette County robberies. The court instructed the jury that it was only to consider the evidence regarding those robberies to determine a common scheme or mode of operation. The circuit court provided another limiting instruction during its charge to the jury. Additionally, the prosecutor instructed the jury numerous times that the testimony regarding those robberies was to be considered only for the purpose of determining a common plan or mode of operation. Any testimony provided by Mr. Toler would have regarded the same Rule 404(b) evidence covered by the limiting instruction provided by the circuit court before the other witnesses' testimony and in its general charge to the jury. Second, there was substantial evidence of petitioner's guilt as to the crime charged. Mr. Vandall and Ms. Moses testified as to the robbery in question and both were able to identify petitioner as the perpetrator due to their frequent interactions with him prior to the robbery. Accordingly, we find that to the extent that there was any error committed by the circuit court in failing, sua sponte, to provide a limiting instruction prior to Mr. Toler's testimony, it did not affect the fairness of the proceedings under a plain error analysis and any error that did occur was harmless.

Petitioner next assigns as error the circuit court's refusal to admit the personnel file of Sgt. McMillen. According to petitioner, he developed evidence that Sgt. McMillen had been reprimanded for "significant misconduct" that was described in the personnel file as "unbecoming[] misconduct of a substantial nature affecting the rights and interests of the public, or that casts aspersions or doubt on a law enforcement officer's honesty or integrity." Petitioner

contends that the circuit court erred in determining that the information was not relevant to the testimony provided by Sgt. McMillen and in refusing to admit the file pursuant to West Virginia Rules of Evidence Rule 608(b).[11] We find petitioner's argument to be without merit.

> "'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus point 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994)." Syl. pt. 2, *State v. Doonan*, 220 W.Va. 8, 640 S.E.2d 71 (2006).

Syl. Pt. 4, *State v. Bowling*, 232 W. Va. 529, 753 S.E.2d 27 (2013). Further,

> it is well settled that a party may not present extrinsic evidence of specific instances of conduct to impeach a witness on a collateral matter. *See* W.Va.R.Evid. 608(b). A matter is considered noncollateral if "the matter is itself relevant in the litigation to establish a fact of consequence[.]" 1 *McCormick On Evidence* § 49 at 167 (4th ed. 1992). *See also Michael on Behalf of Estate of Michael v. Sabado*, 192 W.Va. 585, 453 S.E.2d 419 (1994).

*State v. Guthrie*, 194 W. Va. 657, 680 n.31, 461 S.E.2d 163, 186 n.31 (1995). Here, petitioner's initial counsel sought to have Sgt. McMillen's personnel file admitted into evidence. However, after that counsel withdrew and another was appointed, petitioner's second counsel requested time to familiarize himself with the case and noted that he was "having a real struggle" and that "[petitioner] and [prior counsel's] plan was to put Trooper McMillan [sic] on trial for sexual misconduct. That was the plan." There is no evidence in the record that any of the files documenting the reprimand Sgt. McMillen received in the course of his duties was related to the

---

[11]Rule 608(b) sets forth the following:

(b) Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination of a witness other than the accused, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

(1) the witness; or

(2) another witness whose character the witness being cross-examined has testified about.

By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

case at bar, or whether his testimony was truthful. Any evidence from the file regarding this alleged sexual misconduct that would have been used to impeach Sgt. McMillen was noncollateral and irrelevant to the litigation at hand. Further, petitioner cites to no portion of the record establishing that his second counsel continued to request the personnel file after he opined on what petitioner's true motives for the file were. Based on the foregoing, we find no abuse of discretion in the circuit court's decision to exclude the personnel file from evidence.

Lastly, petitioner argues that this Court should grant him relief based upon cumulative error. Pursuant to the cumulative error doctrine, there must be "numerous" errors:

> Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error. Syl. pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972)

*State v. Tyler G.*, 236 W. Va. 152, 165, 778 S.E.2d 601, 614 (2015). Further, "[t]wo errors do not constitute 'numerous' for purposes of the cumulative error doctrine." *Id.* Assuming, for the sake of argument, that the "errors" in this case were numerous, they collectively are not so substantial as to have denied the petitioner a fair trial. It has been correctly observed that "[i]f the errors, while numerous, are insignificant or inconsequential, the case should not be reversed under the doctrine." *Id.* (citing 1 Louis J. Palmer, Jr., Robin Jean Davis and Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 103.03[1][e], p. 37 (6th ed.2015)). Although we noted no specific errors here, to the extent that there were multiple harmless errors found in this case, the State's reference of the zippers and grommets, the failure of the circuit court to provide a limiting instruction prior to Mr. Toler's testimony, and Detective Willis's testimony regarding a nontrial witness's statement are clearly insignificant errors in light of the strong testimony of petitioner's guilt solicited from Mr. Vandall and Ms. Moses. We therefore reject petitioner's attempt to rely on the cumulative error doctrine.

For the foregoing reasons, we affirm the circuit court's February 8, 2018, sentencing order.

Affirmed.

**ISSUED:** November 8, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison